

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina del Comisionado de Seguros De Puerto Rico<br><br>Recurrida<br><br>v.<br><br>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio<br><br>Peticionaria | Certiorari<br><br>2012 TSPR 28<br><br>184 DPR ____ |

Número del Caso: CC-2009-859

Fecha: 10 de febrero de 2012

Tribunal de Apelaciones:

   Región Judicial de San Juan, Panel II

Juez Ponente:

   Hon. Carlos A. Cabán García

Abogados de la Parte Peticionario:

   Lcdo. Mario Arroyo Dávila
   Lcda. Moraima S. Ríos Robles

Abogados de la Parte Recurrida:

   Lcdo. David J. Castro Anaya
   Lcda. Brenda N. Pérez Fernández

Materia: Revisión Administrativa Procedente de la Oficina del Comisionado de Seguros de P.R.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina del Comisionado de
Seguros de Puerto Rico

    Recurrida

      v.

Asociación de Suscripción
Conjunta del Seguro de
Responsabilidad Obligatorio

    Peticionaria

CC-2009-859     Certiorari

Opinión del Tribunal emitida por el Juez Asociado señor ESTRELLA MARTINEZ

San Juan, Puerto Rico, a 10 de febrero de 2012.

Nos corresponde resolver si de conformidad con la Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor, Ley Núm. 253-1995, según enmendada, (26 L.P.R.A. secs. 8051-8061), (Ley de Seguro de Responsabilidad Obligatorio) y el Art. 20(e) de la Regla LXX del Reglamento Núm. 6254 de 28 de diciembre de 2000 del Reglamento del Código de Seguros (Regla LXX), la Asociación de Suscripción Conjunta puede distribuir las ganancias que provienen de la inversión de sus activos o está limitada a distribuir exclusivamente las procedentes al negocio de suscripción.

**I**

La Oficina del Comisionado de Seguros de Puerto Rico (OCS) investigó las operaciones de la Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio (ASC) con el propósito de escudriñar la condición financiera y el cumplimiento con el Código de Seguros de Puerto Rico (Código de Seguros), 26 L.P.R.A. sec. 101 *et seq.* El periodo investigado comprendió del 1 de julio de 2001 al 31 de diciembre de 2004.

Al finalizar la investigación, la OCS notificó a la ASC copia del informe con los hallazgos de la pesquisa. Con relación al asunto ante nuestra consideración, el informe reflejó que la ASC tomó como base la prima devengada para computar la distribución de sus dividendos sobre la inversión de sus activos. La OCS razonó que la ASC solamente podía distribuir la ganancia generada por el negocio de suscripción.

La ASC difirió del informe emitido. Durante el proceso administrativo ante la Comisionada de Seguros la ASC argumentó que cumplió con la restricción impuesta por la Ley de Seguro de Responsabilidad Obligatorio y el Art. 20(e) de la Regla LXX.[1] Sostuvo que limitó la repartición de ganancias de los activos de inversión al por ciento

---

[1] Para propósitos de la disposición de la controversia ante nuestra consideración haremos referencia a la Ley de Seguro de Responsabilidad Obligatorio y las enmiendas que cubren el periodo investigado. Éstas son: (1) Ley Núm. 414-2004; (2) Ley Núm. 230-2002; (3) Ley Núm. 201-1997; y (4) Ley Núm. 94-1997.

máximo establecido en la distribución del dólar prima aplicado a la prima devengada para cada año en cuestión.

Por su parte, la OCS replicó la postura de la ASC ante la Comisionada de Seguros. Discutió que la ASC no cumplió con la ley ni el reglamento al transferir ganancias que no estaban relacionadas al negocio de suscripción. Arguyó que la participación de la ganancia está ligada exclusivamente al negocio de suscripción debido a que la base para su cómputo es el dólar prima y la prima devengada en el año.

La OCS y la ASC acordaron someter sus posturas por memorandos de derecho. Luego de examinar las mismas, el 12 de julio de 2008 la Comisionada de Seguros emitió la correspondiente resolución. En ésta, determinó que la ASC repartió dividendos de la ganancia de la inversión de activos limitada al cinco por ciento (5%) de la prima devengada para cada año. La Comisionada de Seguros juzgó que la ASC únicamente podía distribuir como dividendos las ganancias generadas por el negocio de suscripción para cada periodo y  no las derivadas de la inversión de sus activos. Ultimó que la repartición no podía sobrepasar el cinco por ciento (5%) de la prima devengada para cada año y que cualquier excedente debía ser transferido a una reserva especial. Además, expresó que la Regla LXX del Reglamento prohíbe que se utilice dicha reserva especial para la distribución de la participación en ganancias. El sobrante sería utilizado en el futuro para estabilizar las primas del seguro y ampliar sus beneficios.

A tenor con dicha interpretación, la Comisionada de Seguros concluyó que la ASC violó la Ley de Seguro de Responsabilidad Obligatorio y el Art. 20(e) de la Regla LXX, *supra*. Como consecuencia, ordenó a la ASC recuperar la ganancia distribuida en exceso para el periodo investigado e impuso una multa de $1,000 por la referida violación.

Inconforme con la determinación de la Comisionada de Seguros, la ASC presentó una oportuna moción de reconsideración. En ésta, la ASC argumentó que no hay fundamento en la Ley de Seguro de Responsabilidad Obligatorio ni en la Regla LXX para limitar la procedencia de la distribución de sus ganancias al negocio de suscripción y rechazar la repartición de los ingresos netos de la inversión de sus activos. En respuesta a la solicitud de reconsideración, la OCS resaltó que su interpretación era cónsona con la ley y su reglamento. Por tanto, reiteró que no se podían distribuir las ganancias que provenían de la inversión de los activos de la ASC y solamente se podía repartir las derivadas del negocio de suscripción.

El 30 de septiembre de 2008 la Comisionada de Seguros declaró "no ha lugar" la solicitud de reconsideración presentada por la ASC. Como consecuencia, la ASC acudió el 31 de octubre de 2008 en un recurso de revisión administrativa ante el Tribunal de Apelaciones. Dentro de los errores señalados, la ASC reiteró que la interpretación de la Comisionada de Seguros limitando la

distribución de las ganancias a las generadas por el negocio de suscripción era errónea. Sostuvo que ni la ley ni el Art. 20(e) de la Regla LXX, *supra*, impiden la repartición de las ganancias exclusivamente al negocio de suscripción. La ASC no impugnó la validez del Art. 20(e) de la Regla LXX. Al delinear su postura hizo referencia a varias disposiciones legales, y con relación a éstas expresó que "la Comisionada no tiene autoridad en ley para limitar la facultad de la ASC de distribuir las ganancias generadas por su negocio entre sus miembros". Véase, *Recurso de Revisión Administrativa* presentado por la ASC ante el Tribunal de Apelaciones, Ap., págs. 11-12.

El 19 de mayo de 2009 el Tribunal de Apelaciones emitió una sentencia mediante la cual confirmó la determinación de la Comisionada de Seguros. En lo pertinente, el foro intermedio determinó que la Ley de Seguro de Responsabilidad Obligatorio y el Art. 20(e) de la Regla LXX, *supra*, disponen cómo será la participación de los miembros de la ASC en las ganancias o pérdidas de ésta. Además, manifestó que la OCS podía limitar la procedencia de la distribución de las ganancias que efectuaba la ASC. En cuanto a las ganancias, interpretó la ley y concluyó que éstas no pueden exceder el por ciento máximo establecido en el dólar prima de la prima devengada para cada año limitado a las primas directas netas suscritas para cada periodo. Por tanto, razonó que la ASC sólo puede distribuir la ganancia atribuida al negocio de suscripción. El sobrante de la ganancia debía mantenerse

en una reserva especial sosteniendo la interpretación de la Comisionada de Seguros.

La ASC solicitó reconsideración aduciendo que durante los procedimientos cuestionó solamente el alcance de la interpretación reglamentaria y no la autoridad de la OCS para emitir una reglamentación que limitara los derechos concedidos en la Ley de Seguro de Responsabilidad Obligatorio. Asimismo, reiteró que la interpretación realizada era equivocada. La ASC explicó que de las disposiciones citadas por el Tribunal de Apelaciones no surge una restricción a la distribución de las ganancias. Tampoco se expresa que éstas deben ser a base de las ganancias generadas por el negocio de suscripción. Aclaró que las disposiciones estatutarias establecieron que las ganancias y pérdidas en las operaciones de la ASC se repartirían entre sus miembros en proporción a las primas directas suscritas en Puerto Rico por cada uno de éstos. Destacó que ni la Ley de Seguro de Responsabilidad Obligatorio ni el Art. 20(e) de la Regla LXX, *supra*, disponen que las ganancias a dividir correspondan exclusivamente al negocio de suscripción. La OCS presentó su oposición.

Aquilatadas las argumentaciones de las partes, el Tribunal de Apelaciones emitió el 31 de agosto de 2009 una sentencia en reconsideración. Sin embargo, en cuanto a lo

que nos atañe, el foro intermedio sostuvo su determinación previa. [2]

En desacuerdo, la ASC compareció ante este Tribunal y señaló el siguiente error:[3]

---

[2]En su petitorio ante el Tribunal de Apelaciones, la ASC solicitó la revisión de las multas impuestas por la Comisionada de Seguros que ascendieron a $15,000. Además del error ante nuestra consideración, señaló que la Comisionada de Seguros erró al concluir que la ASC: (1) no demostró que no era costo efectivo recuperar unos pagos duplicados; (2) incurrió en una práctica desleal al no realizar esfuerzos para recuperar salvamentos; (3) no justificó los gastos de nómina incurridos; (4) debe conceder total deferencia a las recomendaciones presentadas por los miembros de la Oficina del Comisionado de Seguros mientras la Junta de Directores no esté constituida;(5) violó el Código de Seguros al no suministrar información requerida para la auditoría; y (6) es responsable por no realizar gestiones para constituir la Junta de Directores. El Tribunal de Apelaciones revocó a la Comisionada de Seguros con relación a sus conclusiones de que la ASC: (1) venía obligada a reconocer deferencia a las recomendaciones realizadas por dos miembros de la Junta de Directores; (2) violó el Código de Seguros al no suministrar información requerida; (3) la conducta de la ASC constituía una práctica desleal. Además, el foro intermedio dejó sin efecto la conclusión de la Comisionada de Seguros relacionada a la recuperación de salvamentos y remitió dicho asunto para que se celebrara una vista.

[3]La ASC señaló un segundo error relacionado con la facultad del Comisionado de Seguros para limitar la distribución de las ganancias que realiza a sus miembros. La ASC expuso que nunca cuestionó ante los foros recurridos la facultad del Comisionado de Seguros para emitir el reglamento. Adujo que:

> sus argumentos se centraron en torno a la falta de base legal para las limitaciones que la ex Comisionada de Seguros aplicó a la forma en que la ASC distribuye sus ganancias. **Por tanto, la ASC aceptó, para propósitos de la auditoría y como parte del proceso de Revisión Judicial entablado, la corrección del lenguaje del Artículo 20(e)(2) de la Regla LXX**. (Énfasis nuestro.) Véanse: *Alegato de la peticionaria Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio*, pág. 28; *Recurso de Certiorari*, pág. 23.

Erró el Tribunal de Apelaciones al confirmar la resolución de la Ex Comisionada en cuanto a que la ASC no está facultada para distribuir como dividendos la ganancia obtenida por la inversión de sus activos, al limitar la distribución a la ganancia generada por el negocio de suscripción y al ordenarle a la ASC a recuperar la ganancia distribuida en exceso de lo alegadamente permitido.

_____

Por su parte, la OCS expresamente indicó que la controversia ante este Tribunal se circunscribe a si la ASC puede o no distribuir entre sus miembros ganancias que provengan de la inversión de sus activos, por lo que sostuvo que este Tribunal "no debe entrar en estos momentos a considerar la validez de la Regla LXX". Véase, *Alegato del recurrido Comisionado de Seguros de Puerto Rico*, págs. 8, 15.

En efecto, la ASC expresamente se reservó su derecho a cuestionar la validez de la disposición reglamentaria en el recurso legal adecuado. Así lo hizo cuando el 5 de noviembre de 2008 presentó ante el Tribunal de Primera Instancia (KPE2008-3826) una demanda y solicitud de sentencia declaratoria e interdicto preliminar a raíz de la promulgación del Art. 20(e)(2) contenido en la Regla LXX. En el caso ante el foro primario, la ASC sostuvo que el Comisionado de Seguros actuó de manera *ultra vires* al establecer un artículo que limita la distribución de sus ganancias. El Tribunal de Primera Instancia dictó una sentencia *nunc pro tunc* el 16 de marzo de 2011, archivada en autos el día 18 de ese mes. En ella, el foro primario concluyó que el Comisionado actuó conforme a la ley vigente y determinó que la facultad para reglamentar le fue limitada con la aprobación de la Ley Núm. 201-2009. Actualmente, la sentencia emitida por el Tribunal de Primera Instancia en el caso KPE2008-3826 es objeto de revisión en el recurso KLAN201100772 ante el Tribunal de Apelaciones.

Ante la situación esbozada, la realidad de que no se cuestionó en los foros revisados la facultad del Comisionado de Seguros para promulgar la Regla LXX, el hecho de que tal asunto fue presentado en un recurso judicial que está pendiente ante el Tribunal de Apelaciones, la conformidad de las partes sobre la controversia a ser resuelta y el que tal discusión resulta irrelevante para la resolución del recurso ante nuestra consideración, este Tribunal no atenderá en los méritos el segundo señalamiento de error.

El 26 de marzo de 2010 expedimos el recurso y éste quedó sometido para su adjudicación en los méritos el 13 de agosto de 2010. Procedemos a resolver.

## II

Durante muchos años se presentaron varios proyectos en la Asamblea Legislativa con el propósito de establecer un seguro compulsorio de automóviles. Varias comisiones de la Cámara de Representantes y del Senado realizaron estudios sobre la viabilidad, deseabilidad y la conveniencia de establecer una legislación que requiriera a los conductores de vehículos de motor un seguro compulsorio de responsabilidad pública para cubrir los daños causados a la propiedad de terceros como consecuencia de accidentes automovilísticos.

Los esfuerzos culminaron con la asignación de fondos encaminados a facilitar un programa de seguro compulsorio. Véase, Resolución Conjunta Núm. 350 de 10 de diciembre de 1993. En la estructuración del sistema del seguro de responsabilidad se consideró que la cubierta debía tener un costo razonable y responder por una suma baja, entre $1,500 y $3,000. Igualmente, se concibió que esta póliza respondería por el vehículo, estaría basada en el principio de culpa y cubriría solamente los daños ocasionados a vehículos de terceros.

El trabajo realizado culminó con la aprobación de la Ley de Seguro de Responsabilidad Obligatorio en el 1995 y sus posteriores enmiendas. Dicha legislación atendió la problemática que suscitaba la pérdida económica como

resultado de los daños no compensados causados a vehículos en accidentes de tránsito. Para ello, el estatuto condicionó el tránsito por las vías públicas a aquellos vehículos de motor que obtuvieran y mantuvieran una cubierta de seguro de responsabilidad frente a terceros. La cubierta propuesta respondió por los daños causados a vehículos involucrados en accidentes de tránsito por los cuales el dueño del vehículo asegurado fuere legalmente responsable. Art. 2 de la Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8051.

Para lograr una legislación eficiente y de vanguardia se estudió la necesidad de que el seguro fuera provisto por los aseguradores privados autorizados en Puerto Rico. En respuesta a ello, la Ley de Seguro de Responsabilidad Obligatorio impuso a los aseguradores privados el deber de proveer un seguro de responsabilidad obligatorio a los dueños de los vehículos que lo solicitaren. Sin embargo, la Ley de Seguro de Responsabilidad Obligatorio reservó a los aseguradores privados su derecho a ejercer una libre selección de sus asegurados, por lo que éstos podían rechazar solicitantes conforme a unos criterios establecidos. Véase, Art. 5 de Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8054.

Con miras a atender los casos de las solicitudes rechazadas por los aseguradores privados, la legislación instituyó la ASC. Véase, Art. 6 de la Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8055. La creación de esta colectividad respondió al deseo de no

agigantar al gobierno y de utilizar de forma óptima el conocimiento y experiencia adquirida por el sector privado en este tipo de cubierta. Véase, Ponencia del Comisionado de Seguros de 15 de julio de 1995 relacionada al P. del S. 1163, pág. 8.

La ASC está integrada por todos los aseguradores privados como condición para continuar gestionando cualquier clase de seguro en Puerto Rico. A estos efectos, el Art. 3 de la referida disposición legal estableció cuáles "aseguradores privados" compondrían la ASC al definir dicho concepto de la siguiente forma:

> (b) *Asegurador privado*.-Significa un asegurador autorizado o que pueda autorizarse en el futuro a suscribir en Puerto Rico seguros contra cualquier pérdida, gastos o responsabilidad por la pérdida o los daños causados a personas o la propiedad, resultantes de la posesión, conservación o uso de cualquier vehículo terrestre, aeronave o animales de tiro o de montura, o incidentales a los mismos, todo ello de conformidad con el Art. 4.070 (1) del Código, siempre que el volumen de primas suscrita para esa clase de seguro por dicho asegurador sea mayor del uno (1) por ciento del volumen total de primas suscrita en Puerto Rico para el mismo. Véase, Art. 3(b) de la Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8052(b).

Cónsono con ello, todo asegurador de seguros de vehículos que tenga más del uno por ciento del total de las primas suscritas en Puerto Rico para ese tipo de negocio sería forzosamente un integrante de la ASC. Desde su creación el legislador reconoció a la ASC todos los poderes corporativos generales aplicables a un asegurador por acciones, establecidos en el Capítulo 29 del Código de Seguros. Al así hacerlo, la ASC fue constituida como un

asegurador por acciones, es decir, está incorporada con capital dividido entre sus miembros y poseído por éstos. Véanse, Arts. 29.030 y 29.050 del Código de Seguros, 26 L.P.R.A. secs. 2903 y 2905, respectivamente. Como tal, los aseguradores por acciones pagan dividendos en efectivo de los fondos sobrantes que se deriven de cualquier beneficio neto realizado en su negocio. Véase, Art. 29.340, 26 L.P.R.A. sec. 2934.

Atendida la necesidad de crear una cubierta de seguro y de quién proveería el mismo, la Ley de Seguro de Responsabilidad Obligatorio fijó el costo de la prima a ser pagada por la cubierta. La prima para los vehículos de motor privado de pasajeros se estableció en $99 y en $148 para vehículos comerciales. Art. 7 inciso (a) de la Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8056(a). El monto de la prima corresponde a diferentes conceptos de gastos. La porción de los egresos distribuidos en cada dólar cobrado constituye la distribución del dólar prima.

El dólar prima incluye el costo de adquisición del seguro, los impuestos, licencias y otros cargos, el expendio administrativo, la ganancia del asegurador y el ajuste y pago de las pérdidas. La distribución del dólar prima con relación al lucro por el pago de la póliza del seguro obligatorio es un cinco por ciento (5%) de la prima pagada. Véase, Ponencia del Comisionado de Seguros, *supra*, pág. 12. Lo antes expresado significa que el beneficio por

cada prima por vehículo privado equivale a $4.95 y a $7.40 por vehículo comercial.

Para lograr la imposición de la cubierta, el estatuto diseñó un sistema para el recaudo de la prima al momento de renovar o adquirir la licencia del vehículo de motor, es decir, al adquirir el marbete. De esta forma, se minimizó la posibilidad de la existencia de vehículos de motor transitando vías públicas sin estar asegurados. Véase, Art. 4 de la Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8053.

A raíz de ello, se propició que el pago de la prima se hiciera al Secretario de Hacienda al obtener o renovar la licencia del vehículo de motor. Eventualmente, dicho funcionario transfiere el monto de las primas cobradas a la ASC y a los aseguradores privados menos un cargo por el servicio de cobro. El estatuto reconoció al Comisionado de Seguros la facultad de reglamentar la forma y manera en que procedería la distribución de las primas entre los miembros de la ASC. A estos efectos, el Art. 6(c) de la Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8055(c), dispone:

> (c) La Asociación de Suscripción Conjunta recibirá del Secretario de Hacienda **el importe de las primas del seguro de responsabilidad obligatorio** que este funcionario reciba, para su eventual distribución entre los aseguradores privados y la propia Asociación de Suscripción Conjunta, según corresponda. Los gastos administrativos y operacionales de la Asociación de Suscripción Conjunta se harán con cargo al importe por concepto de primas que le corresponda de acuerdo a esta distribución. El Comisionado dispondrá por reglamento la forma y manera en que se llevará

a cabo la distribución del importe de las primas, que reciba la Asociación de Suscripción Conjunta del Secretario de Hacienda. (Énfasis suplido.)

Además de atender lo relacionado a la repartición de las primas cobradas a los aseguradores privados y a la ASC, la Ley de Seguro de Responsabilidad Obligatorio estableció cómo se distribuirían los riesgos de suscribir la cubierta obligatoria entre los miembros de la ASC. Naturalmente al imponer a ciertos aseguradores privados la obligación de integrarse a la ASC era necesario establecer, sin limitación alguna, la participación de éstos en las ganancias y pérdidas de dicha entidad. A estos efectos el Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio, 26 L.P.R.A. sec. 8055(e) dispone lo siguiente:

> (e) Todos los miembros de la Asociación de Suscripción Conjunta **participarán en las ganancias y pérdidas de ésta** en el por ciento que las primas netas directas suscritas en Puerto Rico durante el año anterior por cada uno de dichos aseguradores, para el seguro contra cualquier pérdida, gastos o responsabilidad por la pérdida o los daños causados a personas o la propiedad, resultantes de la posesión, conservación o uso de cualquier vehículo terrestre, aeronave o animales de tiro o de montura, o incidentales a los mismos, todo ello de conformidad con el Artículo 4.070(1), represente del total de las primas netas directas suscritas en Puerto Rico durante dicho año para esa clase de seguro. (Énfasis nuestro.)

Mediante este artículo se materializó el interés de lograr la paridad en la distribución de riesgos entre los miembros de la ASC de forma equitativa. Por ello, la Ley de Seguro de Responsabilidad Obligatorio propició que los

integrantes de la ASC participaran sin limitación alguna de todas las ganancias y pérdidas de la ASC.

Es prudente advertir que la respuesta al grado de proporcionalidad de la repartición de las ganancias y pérdidas de la ASC entre sus miembros la brinda el Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio, *supra*. Éste dispone que la participación en las ganancias y pérdidas de la ASC sería determinada con relación al porcentaje que cada asegurador privado representa del volumen de primas de seguros de vehículos de motor suscritas en Puerto Rico para el año anterior sobre el total de primas suscritas en este renglón por los aseguradores privados que componen la ASC. Entiéndase, a razón del porciento que representa cada integrante de la ASC con relación al total de primas de seguros de vehículos de motor suscritas por la totalidad de éstos.

Lo antes expresado surge del historial legislativo. El Informe Conjunto de las Comisiones de Gobierno, Asuntos Urbanos, Transportación y Obras Públicas, y de Hacienda sobre el P. del S. 1163 de 4 de octubre de 1995, 12ma Asamblea Legislativa, 6ta Sesión Ordinaria, págs. 14-15, dispuso que:

> Considerando, por un lado, que el seguro de responsabilidad obligatorio es uno que se exige en forma universal a todos los dueños de vehículos de motor, y por otro lado, que se permite a los aseguradores privados rechazar en forma limitada algunos riesgos azarosos, es imprescindible que se establezca un tipo de mecanismo mediante el cual se garantice la disponibilidad del seguro de responsabilidad obligatorio a todos los dueños de vehículos de motor. Este mecanismo logrará evitar que la experiencia de los riesgos rechazados por

los aseguradores privados encarezca indebidamente el costo de la cubierta de los riesgos normales.

El mecanismo deberá ser de tal naturaleza que distribuya en la forma más equitativa posible, entre los aseguradores privados que suscriben este tipo de seguro, los riesgos que normalmente aquéllos no desean suscribir. De esta forma se logra que ningún asegurador en particular quede sobrecargado con los riesgos que nadie desea.

Atendiendo esta realidad, el Artículo 6 establece una Asociación de Suscripción Conjunta integrada por todos los aseguradores privados que suscriben en la Isla seguro de vehículos de motor conforme al Código de Seguros de Puerto Rico. El propósito principal de esta Asociación será proveer el seguro de responsabilidad obligatorio a los solicitantes de dichos seguros rechazados por los aseguradores privados.

**Para lograr la equidad de la distribución de riesgos, el Artículo 6(e) del P. del S. 1163 estipula que los aseguradores privados miembros de la Asociación de Suscripción Conjunta participarán en sus ganancias y pérdidas en la proporción que el volumen de primas de seguro de vehículos de motor, suscrito en Puerto Rico por cada uno de ellos, represente del total de primas de ese tipo de seguro suscrita en Puerto Rico por todos los aseguradores miembros de dicha Asociación.**

Para garantizar la operación eficiente de la Asociación de Suscripción Conjunta, el Comisionado de Seguros queda facultado en el Artículo 6(f) de la medida para reglamentar la estructura y operación de dicha Asociación. (Énfasis nuestro.)

Igualmente, el Comisionado de Seguros en su ponencia del 15 de julio de 1995, pág. 9 expresó:

Para lograr la equidad de la distribución de riesgos, el Art. 6(e) del proyecto estipula que **los aseguradores privados miembros de la asociación de suscripción conjunta participarán en sus ganancias y pérdidas operacionales** en la proporción que el volumen de primas de seguro de vehículos de motor, suscrito en Puerto Rico por cada uno de ellos, represente del total de primas de ese tipo de seguro suscrita en Puerto Rico por todos los aseguradores miembros de dicha asociación. (Énfasis nuestro.)

Posteriormente, el Comisionado de Seguros promulgó el Art. 20(e) de la Regla LXX, *supra*, para incorporar lo establecido en el Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio, *supra*. La corrección del Art. 20(e) de la Regla LXX, *supra*, no está en controversia en el recurso ante nuestra consideración. Al aprobar la Regla LXX, el Comisionado de Seguros, integró el concepto de la distribución del dólar prima aplicado a la prima devengada para establecer un límite a la ganancia a repartirse por la ASC. Específicamente el inciso 2 del Art. 20(e) de la Regla LXX establece lo siguiente:

> Los miembros **participarán en las ganancias o pérdidas anuales de la Asociación de Suscripción Conjunta** conforme a la participación proporcional de cada uno de dichos miembros para el año que se determinan dichas ganancias o pérdidas. En cuanto a la participación de **las ganancias, la misma no podrá exceder el por ciento máximo establecido en la distribución del dólar prima para las ganancias, aplicado a la prima devengada de dicho año.**
>
> El exceso de las ganancias de cada año sobre las cantidades distribuidas por razón de la participación estipulada en este apartado quedará acumulado en una reserva especial del sobrante que se utilizará exclusivamente para la estabilización futura de los beneficios del mismo. **En ningún caso se podrá utilizar el referido exceso acumulado en dicha reserva para la distribución de la participación en las ganancias que se establece en el párrafo anterior.** (Énfasis suplido.)

De esta forma la disposición reglamentaria citada prescribe que la ganancia a ser repartida no puede exceder el por ciento máximo establecido en la distribución del dólar prima correspondiente a la prima devengada. Cualquier exceso se acumularía en una reserva especial. Al

así hacerlo, y para simplificar lo antes expresado, debe entenderse que el monto de las ganancias que la ASC puede distribuir en determinado año está restringido a la cantidad que resulte de la prima devengada multiplicada por el cinco por ciento (5%) que corresponde a la distribución del dólar prima por concepto de la ganancia para este renglón. Al sujetar el límite de la ganancia a la prima devengada, la citada reglamentación garantizó que existiera cubierta para aquellas primas pagadas por adelantado por las cuales no ha concluido el periodo de cubierta de la póliza.

**III**

Una vez establecido que las ganancias de la ASC no excederán del cinco por ciento (5%) de la prima devengada y que éstas se repartirán entre sus miembros a base de lo que representa cada uno de éstos para el mercado de primas netas suscritas en Puerto Rico, falta aclarar cuáles son las ganancias operacionales que la ASC puede distribuir. ¿Es la ganancia del ingreso neto por las operaciones del negocio de suscripción de la ASC o puede ser la derivada de la inversión de sus activos? La contestación a esta interrogante la proporciona también el propio Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio, *supra*, y el Art. 20(e) de la Regla LXX, *supra*.

Como expresamos, al crear la ASC el legislador le reconoció las facultades enmarcadas en los poderes generales de un asegurador por acciones. Por consiguiente, la ASC puede, entre otras, adquirir, poseer, hipotecar,

traspasar y de otro modo administrar, utilizar y **disponer de bienes** inmuebles y **muebles.** De igual modo, la ASC puede aprobar, enmendar y derogar reglamentos que regulen sus procedimientos corporativos y el manejo de sus negocios. Véase, Art. 29.050 (4) y (7) del Código de Seguros, 26 L.P.R.A. sec. 2905. La ASC opera y constituye una empresa privada. Véase, <u>Asociación de Suscripción Conjunta del Seguro de Responsabilidad Obligatorio v. Flores Galarza</u>, 484 F.3d 1, 20 (1er Cir. 2007).[4] Ésta puede pagar dividendos en efectivo de los **fondos sobrantes de cualquier beneficio neto realizado en su negocio.** Véase, Art. 29.340 del Código de Seguros, *supra.*[5]

Es por ello que el examen del Art. 6(e), *supra*, su historial legislativo y el Art. 20(e) de la Regla LXX, denotan que las ganancias a ser distribuidas entre los integrantes de la ASC no están confinadas al ingreso neto del negocio de suscripción. La ley específicamente dispone que los aseguradores privados miembros de la ASC **"participarán en las ganancias y pérdidas de ésta".** (Énfasis nuestro.) Véase, Art. 6(e) de la Ley de Seguro Obligatorio, *supra*. El estatuto no circunscribió la

---

[4] Véase, <u>Arroyo-Melecio v. Puerto Rican American Ins. Co.</u>, 398 F.3d 56, 62 (1er Cir. 2005).

[5] Aunque desde la Ley de Seguro de Responsabilidad Obligatorio surge que se le reconoció a la ASC los poderes de los aseguradores por acciones, la Ley Núm. 201-2009 aclaró el particular al disponer expresamente en el Art. 6 (d), 26 L.P.R.A. sec. 8055(d), que "la Asociación de Suscripción Conjunta se considerará un asegurador por acciones, según dicho término se define en el Artículo 29.030 del Código". El asegurador por acciones es el

repartición de las ganancias ni la responsabilidad por las pérdidas de la ASC al ingreso neto del negocio de suscripción. Solamente estableció que la proporción de la participación de los integrantes de la ASC en sus ganancias o pérdidas sería a base de la proporción de éstos con relación a las primas netas directas suscritas en Puerto Rico. De igual modo, el Art. 20(e) de la Regla LXX mantuvo el mismo lenguaje al no establecer una prohibición específica a la procedencia de las ganancias a ser distribuidas entre los miembros de la ASC. El referido artículo únicamente dispuso que la ganancia a ser distribuida no podía exceder del cinco por ciento (5%) de la prima devengada. Además, estableció que el exceso de ganancia para cada año se acumularía en una reserva especial.[6] La cual sería exclusivamente utilizada para la estabilización futura de las primas del seguro de responsabilidad obligatorio y la ampliación futura de los beneficios.

Lo antes expuesto, no significa ni puede interpretarse como que el Art. 20 (e) de la Regla LXX, *supra*, limitó la ganancia a distribuirse al negocio de suscripción sino que impuso un tope a la ganancia a ser recibida cualquiera que

_____

asegurador incorporado con capital dividido en acciones y poseído por sus accionistas. 26 L.P.R.A. sec. 2903.

[6]La partida de reserva especial es reportada por la ASC en la partida de *Sobrante Especial* bajo el acápite de Capital y Sobrante del Estado de Situación Comparativo al 31 de diciembre de 2002, 2003 y 2004. Ésta refleja que en el 2002 la misma era de $82,408,986, en el 2003 ascendió a $90,734,494 y en el 2004 a $92,334,521. Véase, Ap., pág. 133.

sea. El exceso a no repartirse se acumularía en una reserva especial.

Con el fin de conservar los fondos contenidos en la reserva especial, el Art. 20 (e) de la Regla LXX, *supra*, expresamente dispuso que el monto acumulado en la reserva especial no podría utilizarse en la distribución de la participación de ganancias. La reserva especial sería exclusivamente utilizada para la estabilización futura de las primas del seguro de responsabilidad obligatorio y la ampliación futura de los beneficios. Como consecuencia del Art. 20(e) de la Regla LXX, *supra*, la ASC está impedida de distribuir fondos pertenecientes a la reserva especial, lo cual incluye las ganancias derivados de la inversión de activos acumulados en la reserva especial. En definitiva, bajo el Art. 20(e) de la Regla LXX, *supra*, cualquier ganancia producto de la inversión de los fondos depositados en la reserva especial no puede ser distribuida y debe acumularse como parte de la referida partida.

**IV**

La ASC compareció ante este Tribunal y planteó que no existe base en la Ley de Seguro de Responsabilidad Obligatorio ni en el Art. 20(e) de la Regla LXX que sostenga la interpretación de la Comisionada de Seguros con relación a que únicamente podía repartir las ganancias del negocio de suscripción hasta un cinco por ciento (5%) de la prima devengada para el periodo investigado.

En el caso de autos no existe polémica con relación a que la participación en las ganancias o pérdidas de la ASC para cada uno de sus miembros es proporcional al total de primas de seguros de vehículos de motor suscritas por éstos en Puerto Rico durante el año anterior. Tampoco se cuestiona ni existe debate con relación a que las ganancias a ser distribuidas no podrán exceder del cinco por ciento (5%) establecido para las ganancias en la distribución del dólar prima aplicado a la prima devengada. Igualmente, es un hecho irrefutable que la ASC calculó y limitó la cantidad a distribuir entre sus aseguradores miembros al cinco por ciento (5%) del total de lo que representa la prima devengada. Al así hacerlo, tomó como base para calcular la distribución la ganancia atribuida a la inversión de sus activos.

Las actuaciones de la ASC dieron lugar a que la OCS concluyera que la ASC infringió la Ley de Seguro de Responsabilidad Obligatorio y el Art. 20 (e) de la Regla LXX, *supra*. Ésta interpretó que la ganancia sobre la cual la ASC tiene derecho a distribuir es la generada por el negocio de suscripción. Por tanto, concluyó que la repartición realizada de la inversión de sus activos fue en exceso a lo permitido por ley. El Tribunal de Apelaciones avaló tal conclusión. Erró al así proceder.

Ninguna de las disposiciones en controversia restringen la participación de los aseguradores miembros de la ASC a las primas netas directas suscritas en Puerto Rico. Mucho menos hacen referencia a que éstas se

circunscriben a las ganancias relacionadas con el negocio de suscripción.

Al sostener su dictamen el Tribunal de Apelaciones analizó erróneamente el Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio, *supra*. En su razonamiento, el foro intermedio interpretó de forma desacertada que el referido artículo dispone que los miembros de la ASC participarán de las ganancias o pérdidas a distribuirse de las primas netas directas suscritas en ese año. Su equivocación estriba en que confundió y equiparó la correlación entre la manera en que se llevaría a cabo la distribución entre los integrantes de la ASC con la procedencia de la ganancia a distribuirse.

La discusión normativa antes expuesta revela que el Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio, *supra*, establece que los aseguradores privados miembros de la ASC **"participarán en las ganancias y pérdidas de ésta"**. (Énfasis nuestro.) Acto seguido el referido artículo dispone la forma en que se calculará la contribución de los integrantes de la ASC en sus ganancias o pérdidas. Para ello, el legislador empleó el concepto de las "primas netas directas suscritas en Puerto Rico durante el año anterior por cada uno de dichos asegurados". Íd. De esta forma, el legislador determinó la proporción en la que serían acreedores los aseguradores privados de las ganancias de la ASC y la responsabilidad de éstos en cuanto a las pérdidas de ésta. Estableció un sistema equitativo cónsono con el liderazgo de los

aseguradores privados que integran la ASC en el mercado de Puerto Rico. No obstante, ello no puede interpretarse ni equivale a que limitó la repartición al concepto de primas netas directas suscritas por la ASC.

La lectura sosegada de dicho articulado denota que no se estableció o limitó la participación de los aseguradores privados que integran la ASC a las "primas netas directas suscritas" como interpretó la Comisionada de Seguros y avaló el Tribunal de Apelaciones. Tal conclusión resulta totalmente errónea. La referencia a las primas netas directas suscritas en Puerto Rico es a los fines de establecer cómo se haría la división correspondiente y no al efecto de indicar la procedencia de la ganancia o pérdida a repartirse.

En ningún acápite de la ley o del Art. 20(e) de la Regla LXX, *supra*, se limita la base sobre la cual se computa la participación en las ganancias o pérdidas de los aseguradores privados. La razón es sencilla. El legislador concibió que los miembros de la ASC deben responder de todas las pérdidas que dicha institución pueda tener. No limitó la obligación de éstos a las primas netas directas ni al negocio de suscripción. De igual manera, les reconoció su derecho a recibir las ganancias operacionales de la ASC.

Como vimos reflejado en el historial legislativo y en la ponencia del Comisionado de Seguros, al aprobarse el Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio, se estableció que los aseguradores privados

miembros de la ASC "participarán en sus ganancias y pérdidas **operacionales**". (Énfasis nuestro.) Asimismo, se dispuso que ello será en proporción al volumen de primas de seguros de vehículos de motor suscrito que cada uno de ellos represente del total de primas de este tipo suscritas en Puerto Rico. Véanse: Ponencia del Comisionado de Seguros del 15 de julio de 1995, *supra*, pág. 9; Informe Conjunto del P. del S. 1163, *supra,* pág. 15.  La única restricción impuesta concierne a que las ganancias a repartirse no podrán exceder el cinco por ciento (5%) de la prima devengada. Ello responde a que ésta fue la cuantía determinada para el lucro en el dólar prima.

Por lo tanto, concluimos que la ASC puede distribuir las ganancias o pérdidas entre sus miembros de la totalidad de sus operaciones incluyendo la inversión de sus activos. Ahora bien, la repartición de las ganancias no podrá exceder el cinco por ciento (5%) de la prima devengada para dicho año conforme dispone el Art. 6(e) de la Ley de Seguro de Responsabilidad Obligatorio y el Art. 20(e) de la Regla LXX, *supra.* En efecto esto fue lo que la ASC hizo.

No obstante lo anterior, la ASC estaba limitada por el Art. 20 (e) de la Regla LXX, *supra*, en cuanto a la distribución del fruto de la inversión del dinero acumulado en la reserva especial. El referido artículo establece que el exceso acumulado en la reserva especial no podrá ser utilizado para la distribución de la participación de ganancias. A estos efectos, la OCS

esgrimió su preocupación de que permitir a la ASC la distribución de la inversión de activos podría conllevar la distribución de los frutos correspondientes a la inversión del dinero acumulado en la reserva especial.[7]

Como examinamos, el Art. 20(e) de la Regla LXX, *supra*, prohíbe que se utilice el exceso acumulado en la reserva especial para la distribución de ganancias. Ello incluye el producto de las ganancias provenientes de la inversión de los fondos agrupados y que constituyen dicha reserva especial. Del expediente ante nuestra consideración no surge la procedencia de los bienes utilizados para la inversión de activos de la ASC. Por tanto, desconocemos si la ASC invirtió capital acumulado en la reserva especial como parte de su política de inversión. Cualquier ganancia derivada de las inversiones del dinero acumulado en la reserva especial no podía distribuirse entre los miembros de la ASC. Solamente procedía repartir las ganancias de la inversión de los activos que no son producto de las aportaciones que formaban la reserva especial.

Como consecuencia de lo anterior, la ASC no está limitada a distribuir ganancias provenientes exclusivamente del negocio de suscripción. Ésta puede repartir las ganancias derivadas de la inversión de sus activos que no resulten de la inversión de la reserva especial. Los rendimientos de la inversión de bienes de la

---

[7]Véase, *Oposición a Solicitud de Revisión Judicial* presentada ante el Tribunal de Apelaciones, Ap., págs.1368-1370.

reserva especial formarán parte de ésta en virtud de lo dispuesto en el Art. 20(e) de la Regla LXX, *supra*. El Comisionado de Seguros deberá determinar si la ASC como parte de su política de inversiones utilizó dinero de la reserva especial. Si ese fuera el caso para el periodo investigado, las ganancias atribuidas a los bienes de la reserva especial deberán acumularse como parte de ésta para cada año investigado.

## V

Por los fundamentos expuestos, revocamos la sentencia emitida por el Tribunal de Apelaciones. Devolvemos el caso a la Oficina del Comisionado de Seguros de Puerto Rico a los únicos efectos de que determine si para el periodo investigado se invirtieron fondos acumulados de la reserva especial. El producto de la inversión del capital acumulado de la reserva especial, si alguno, deberá depositarse como parte de ésta.

Se dictará Sentencia de conformidad.

LUIS F. ESTRELLA MARTÍNEZ
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Oficina del Comisionado de
Seguros de Puerto Rico

        Recurrida

            v.
                        CC-2009-859        Certiorari
Asociación de Suscripción
Conjunta del Seguro de
Responsabilidad Obligatorio

        Peticionaria




                        SENTENCIA



San Juan, Puerto Rico, a 10 de febrero de 2012.

        Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la sentencia emitida por el Tribunal de Apelaciones. Se devuelve el caso a la Oficina del Comisionado de Seguros de Puerto Rico a los únicos efectos de que determine si para el periodo investigado se invirtieron fondos acumulados de la reserva especial. El producto de la inversión del capital acumulado de la reserva especial, si alguno, deberá depositarse como parte de ésta.

        Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo